**LAUREN DALEY,**

     **Plaintiff,**

**v.**                             **Case No: 8:18-CV-1465-T-27AAS**

**DR. FRANK S. BONO, D.O., ROBERT**
**J. SHUTTERA, GULF COAST SPINE**
**INSTITUTE, BIOSPINE INSTITUTE,**
**LLC, and AVION ANESTHESIA, LLC,**

     **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice (Dkt. 47), Plaintiff Lauren Daley's response (Dkt. 51), and motions for summary judgment from Defendant Robert Shuttera (Dkt. 48) and Defendants Gulf Coast Spine Institute, BioSpine Institute, LLC, and Avion Anesthesia, LLC (collectively, the "Medical Defendants") (Dkt. 49), and Plaintiff's responses (Dkts. 54, 55). Upon consideration, Defendants' motions for summary judgment are **GRANTED**. The motion to dismiss is **DENIED as moot**.

## I. BACKGROUND AND UNDISPUTED FACTS

This lawsuit alleging violations of the Florida Consumer Collection Practices Act ("FCCPA") and the Fair Debt Collection Practices Act ("FDCPA") arises from efforts by medical providers to guarantee and collect payment for medical services provided to a patient injured in two automobile accidents who was referred to them for treatment by her personal injury attorney. Before being treated, the patient signed an industry standard letter of protection ("LOP")

guaranteeing payment from the proceeds of any settlement of her personal injury claims or verdict award, to cover medical costs not covered by insurance. She also signed assignments of benefits in favor of the medical providers.

In her Second Amended Complaint, Daley alleges the medical providers and their attorney violated the FCCPA and FDCPA by conditioning medical services on a guarantee of payment, unsuccessfully billing her insurers, sending balance statements, and enforcing the LOP through their attorney after her personal injury claims were settled. She contends that those actions constituted debt collection activity and that the medical providers and their attorney conspired to violate the state and federal consumer protection statutes.

The material facts are largely undisputed. In August 2014, Daley suffered slipped discs in her neck and a dislocated jaw as a result of two automobile accidents. (Dkt. 50-1 at 6, 16). She initially saw a chiropractor for her neck injury and a dentist for her jaw injury. (Id. at 6). Her personal injury lawyer, Michael Meksraitis, referred her to Dr. Bono for continuing neck pain. (Id. at 6-7). On May 27, 2015, during her third visit with Dr. Bono, he performed surgery to cauterize the nerves in her neck. (Id. at 7; Dkt. 50-3 at 4).

Dr. Bono's medical services were billed through Gulf Coast Spinal Institute. (Dkt. 50-3 at 4). BioSpine Institute, LLC provided the surgical center for the surgery. (Id.). Avion Anesthesia provided anesthesia during the surgery. (Id.). Daley is not aware of any medical treatments or procedures that were medically unnecessary. (Dkt. 50-1 at 11).

At the time of the accident, Daley had health insurance with Tricare and automobile insurance with State Farm. (Id. at 6, 16). Dr. Bono's charges were covered by her insurance. (Dkt. 50-3 at 4). At the time of surgery, BioSpine was not approved to bill Tricare. (Id.; Dkt. 55-1 at 18,

20). Daley knew BioSpine could not bill Tricare, but still went ahead with the surgery. (Dkt. 50-3 at 4).[1] BioSpine's attempts to obtain payment from Tricare after it was approved to bill were unsuccessful. (Id.). Avion submitted its bill to State Farm, but the State Farm coverage had been exhausted. (Id.; Dkt. 50-2 at 3).[2] Avion also billed Tricare, but payment was declined since Avion was not approved to bill Tricare at the time of surgery. (Dkt. 50-3 at 4).

During her first visit with Dr. Bono, Daley signed an LOP. LOPs guarantee payment for medical treatment from a future lawsuit settlement or verdict award where insurance does not cover all the costs. (Dkt. 50-3 at 3). The letter Daley signed provided,

> I authorize my attorney to withhold such sums from any insurance settlement, judgment, verdict, or other source as may be necessary to adequately protect provider on all funds owing to me from my case by way of insurance payments, judgment, verdict, or other such source which may be paid to my attorney or myself.

> Provider agrees to make every effort to collect benefits from any and all available and/or applicable coverage. . . .

> It is understood that if the attorney of record no longer represents me for my claim, makes no recovery on my claim, or fails to adhere to any and all terms agreed to in this [LOP], the entire balance for services rendered to me will be immediately regarded as my responsibility.

---

[1] This comes from the declaration of Laura Henderson, the Administrative Director and corporate representative for Avion, Gulf Coast, and BioSpine. Although Daley argues that the Medical Defendants did not "initially advise[]" her that they were ineligible for payment from Tricare (Dkt. 54 at 6), she provides no evidence to refute Henderson's averment that she knew that at least BioSpine could not bill Tricare.

[2] Nonetheless, State Farm provided explanations for rejecting payment that do not relate to exhausted coverage (*see* Dkt. 55-1 at 23, 26, 60), and apparently approved some payments after it notified Meksraitis on September 9, 2014 that Daley's coverage was exhausted, (id. at 25). Although neither party submitted evidence on this, Daley seems to explain that State Farm's payments were based on "the terms and conditions of the policy of insurance under which the subject claim is being made as well as the Florida No Fault Statute." (Dkt. 46 ¶ 28). None of this is material to a resolution of the motions.

(Dkt. 50-1 at 44). That letter was faxed to Meksraitis for his signature, but he did not sign it. (Dkt. 55-1 at 1-5).

Daley also signed a Gulf Coast/BioSpine Financial Policy and Acknowledgment of Notice of Privacy Practices in which she acknowledged "delinquent accounts will be turned over to an outside collection agency or attorney if balances remain unpaid." (Dkt. 50-1 at 17, 50). And she signed a BioSpine assignment of benefits, agreeing to pay the balance of any charges not covered by insurance. (Id. at 18; Dkt. 50-2 at 1).[3]

In her deposition, Daley acknowledged that none of the Medical Defendants communicated with her regarding any of the medical bills. (Dkt. 50-1 at 21). All medical bills and statements went directly to her attorney, Meksraitis, and Daley did not have "any involvement in the back and forth" between Meksraitis and the Medical Defendants. (Id.).

Gulf Coast sent eight statements.[4] (Dkt. 50-3 at 18-24; Dkt. 50-4 at 1-3; Dkt. 55-1 at 34-35, 39, 45). The final two statements reflect that Daley does not have a balance because her insurance paid the amount. (Dkt. 50-4 at 2-3). One statement listing Meksraitis as the addressee requested payment of $13.85. (Dkt. 55-1 at 35). Avion sent five statements, (Dkt. 50-4 at 5-7; Dkt. 55-1 at 36, 44), and BioSpine sent six (Dkt. 50-4 at 9-12; Dkt. 55-1 at 37, 46). Although the statements include a balance, each Avion and BioSpine statement reflects that Daley does not have a patient balance and that $0.00 is due.

---

[3] She signed a second LOP and assignment of benefits prior to surgery. (Dkt. 55-1 at 3, 16). The content of the second forms appears to be the same as the first. (Id.).

[4] Apparently, Defendants and Daley do not include all of the statements in their summary judgment materials. Some statements may have been sent at the request of Meksraitis, who averred in his declaration that his office "sent a fax to the Medical Defendants asking them to provide [him] with updated bills showing all charges, payments, and adjustments" (Dkt. 55-2 at 3). Any dispute about the number of statements is not material to a resolution of the summary judgment motions.

To assist in collecting Daley's unpaid balance, the Medical Defendants retained CSC Medical Services, LLC ("CSC"). (Dkt. 50-5 at 3). CSC is operated by Shuttera, an attorney and member of the Florida Bar who "practice[s] debt collection services" through CSC.[5] (Id. at 2). Shuttera sent four letters to Meksraitis informing him that Shuttera would represent and handle billing issues and negotiations for the Medical Defendants.[6] (Id. at 6-12). The letters also included the following language:

> PLEASE DO NOT DISBURSE FUNDS IN SETTLEMENT OF THIS CASE WITHOUT OUR WRITTEN AGREEMENT. We are SERVICING THIS PAPER ONLY. Ownership of these bills remains fully with the MEDICAL PROVIDERS.

(Id.). Shuttera never had any contact with Daley. (Id. at 3; Dkt. 50-1 at 8). And she did not see the letters he sent to Meksraitis. (Dkt. 50-1 at 21). Meksraitis has not disbursed Daley's settlement proceeds because of Shuttera's letters. (Dkt. 55-2 at 4). In June 2018, she filed this action. (Dkt. 1).

***Pending Claims***

In her Second Amended Complaint, Daley alleges conspiracy to violate the FCCPA against all Defendants (Count I), violations of the FCCPA by Dr. Bono (Count II), Gulf Coast Spine Institute (Count III), BioSpine Institute (Count IV), Avion Anesthesia (Count V), and Shuttera (Count VI)[7], and a violation of the FDCPA by Shuttera (Count VII). (Dkt. 46). Defendants have

---

[5] Shuttera argues that to find him individually liable for any debt collection activity, Daley must pierce the corporate veil of CSC. (Dkt. 48 at 23). In resolving his motion for summary judgment, it is unnecessary to address this contention.

[6] There is a dispute over whether Meksraitis or Shuttera were unwilling to engage in negotiations to resolve the balance. (*See* Dkt. 50-5 at 3; Dkt. 55-2 at 9). This dispute is not material to a resolution of the summary judgment motions.

[7] The complaint alleges Count V twice. The second Count V is construed as Count VI, and Count VI is construed as Count VII.

moved to dismiss the complaint and for summary judgment. Because there is no genuine issue of

material fact and Defendants are entitled to judgment as a matter of law, summary judgment is

appropriate. The motion to dismiss is due to be denied as moot.[8]

## II.    STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine

factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the

evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d

1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson*

*Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing, by reference to materials on file, that

there are no genuine disputes of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d

1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the

movant adequately supports its motion, the burden shifts to the nonmoving party to show specific

facts that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815

(11th Cir. 2010). The evidence presented must be viewed in the light most favorable to the

nonmoving party. *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012).

"Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin*

---

[8] In the motion to dismiss, Defendants argue the complaint is a shotgun pleading and does not state grounds that would
entitle Daley to relief. (Dkt. 47). The motion does not challenge the Court's jurisdiction.

*Cty. v. Purcell Corp.*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable," *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986).

## III.    DISCUSSION

In summary, Daley presents no evidence of an agreement between the Defendants to violate the FCCPA, any direct communication by any of the Defendants with her relating to debt collection, no harassing or abusive conduct by any Defendant, or any false or misleading representations by Defendants. Accordingly, she cannot demonstrate a genuine issue of material fact and summary judgment in favor of the Defendants is appropriate on her FCCPA and FDCPA claims.

### *FCCPA Claims*

In conclusory fashion, Daley alleges that Defendants "in connection with the delivery of, and payment for health care benefits . . . did knowingly and willfully . . . agree with each other . . . to commit certain violations of the FCCPA." (Dkt. 46 ¶ 16). She alleges the "acts engaged in were through the use of false pretenses, and the making of false representations, and promises, to Ms. Daley in order to obtain proceeds from her lawsuits for personal injuries for which she was being treated in excess of the reasonable value of their services." (Id. ¶ 18). Essentially, she alleges the Medical Defendants overcharged her for services and, when the insurers did not pay, sought payment from her personal injury settlement proceeds using practices that violate the FCCPA. (Id. ¶¶ 20-22).

In her other counts, she alleges Defendants violated the following provisions of section 559.72 of the FCCPA:

In collecting consumer debts, no person shall:
. . .
(7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

(Dkt. 46 ¶¶ 48, 50, 54, 55, 75, 82, 91, 98, 106, 113, 139, 146, 153, 155, 170).

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

(Id. ¶¶ 49, 51, 53, 56, 154).

(18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

(Id. ¶¶ 34, 46, 47, 52, 57, 74, 81, 90, 97, 106, 112, 124, 130, 138, 145, 147, 151, 152).

Notwithstanding her conclusory allegation of an agreement between the Defendants, the FCCPA does not recognize a conspiracy cause of action. And in the absence of an agreement to violate the FCCPA or an underlying FCCPA violation, Daley cannot prove a Florida civil conspiracy claim. As noted, there is no evidence that Defendants communicated directly with Daley about debt collection, engaged in abusive or harassing conduct, or attempted to collect an illegitimate debt. Accordingly, Daley has not established a genuine issue of material fact and Defendants are entitled to judgment as a matter of law on her FCCPA claims.

1.     <u>Conspiracy to Violate the FCCPA</u>

It is unclear from the face of Daley's Second Amended Complaint whether she brings Count I under the FCCPA or as a Florida civil conspiracy claim. (Dkt. 46 at 2). In any event, the claim fails because the FCCPA does not provide a private right of action for a conspiracy claim, and Daley cannot prove the elements of Florida civil conspiracy.

Daley cites no authority or to any provision in the FCCPA that recognizes a private right of action for an FCCPA conspiracy claim. As the Florida Supreme Court explains, "courts cannot provide a remedy when the Legislature has failed to do so," and the most important factor to determine whether the legislature intended to create a private right of action is the "actual language used in the statute." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 553, 551 (Fla. 2012) (citations omitted). Defendants correctly point out that the FCCPA creates a cause of action against "a *person* violating the provisions of section 559.72," suggesting that only individual violators are liable. (Dkt. 49 at 11-12).

In support of her argument that the FCCPA provides a private right of action for conspiracy, Daley relies on *Combs v. NCO Fin. Sys., Inc.*, No. CIV.A. 10-5673, 2011 WL 1288686 (E.D. Pa. Apr. 5, 2011). (Dkt. 54 at 8). But that case involved civil conspiracy under Pennsylvania law, not Florida law. 2011 WL 1288686, at *3. And the record evidence is distinguishable from *Combs*. That plaintiff alleged, among other things, that a creditor directed her to call a telephone number that played an automated message identifying the creditor but connecting her to a debt collector. *Combs*, 2011 WL 1288686, at *4. In denying a motion to dismiss, the court found that allegation "in particular is suggestive of concerted action." *Id.*

Even if Daley alleges a Florida civil conspiracy claim, Count I cannot survive summary judgment. Under Florida law, "[t]he essentials of a complaint for civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cty*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993). And significantly, "[a]n act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy." *Buckner v. Lower Fla. Keys Hosp. Dist*., 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981). As will be discussed, none of Defendants' conduct gives rise to an FCCPA violation.

Even if, as Daley alleges, the Medical Defendants "have interlocking ownership and act in concert in their medical practices and collection procedures" (Dkt. 46 ¶ 35), there is no evidence of concerted action among them to violate the FCCPA. Finally, it follows that Defendants' retention of Shuttera to collect on their behalf does not support a civil conspiracy claim. Summary judgment on this claim is therefore due to be granted.

2. Section 559.72(18) of the FCCPA

Summary judgment is likewise appropriate on Daley's claims that Defendants communicated with her rather than her attorney in violation of section 559.72(18). A plaintiff bringing a claim under section 559.72(18) must prove that: (1) a debt collector communicated with a consumer; (2) in connection with the collection of a debt; (3) where the debt collector had actual knowledge that the consumer is represented by an attorney with respect to such debt; and (4) the debt collector had knowledge, or could readily ascertain, the attorney's name or address. *See*

*Castellanos v. Portfolio Recovery Assocs., LLC*, 297 F. Supp. 3d 1301, 1310 (S.D. Fla. 2017) (citations omitted). Even if Defendants' communications were in relation to the collection of a debt, there is no evidence that Defendants communicated directly with Daley.

**In Relation to the Collection of a Debt**

Not all communications with a debtor violate the FCCPA and FDCPA.[9] *See Nordwall v. PNC Mortg.*, No. 2:14-CV-747-FTM-CM, 2015 WL 4095350, at *4 (M.D. Fla. July 7, 2015). For there to be a violation, the communication must be in relation to the collection of a debt. *See* Fla. Stat. § 559.55(2); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) ("[T]o state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection.").

"[T]he Eleventh Circuit has not established a bright-line rule" as to what qualifies as "in connection with the collection of any debt." *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1280 (M.D. Fla. 2015). "As a general principle, the absence of a demand for payment is not dispositive," and courts should "instead consider whether the overall communication was intended to induce the debtor to settle the debt." *Wood v. Citibank, N.A.*, No. 8:14-cv-2819-T-27EAJ, 2015 WL 3561494, at *3 (M.D. Fla. June 5, 2015) (citations omitted). To this end, courts "should look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [writer] was

---

[9] Courts have held "the FCCPA is construed in accordance with the FDCPA." *Lilly v. Bayview Loan Servicing, LLC*, No. 2:17-cv-00345, 2017 WL 4410040, at *2 (M.D. Fla. Oct. 4, 2017); *see also Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011). One difference between the statutes noted by this Circuit is that "the FCCPA applies to any 'person' collecting a consumer debt; it is not limited to statutorily defined 'debt collectors,' like the FDCPA." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019).

attempting to collect a debt and was acting as a debt collector." *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015) (modification in original) (citations omitted). Communications, moreover, "can have more than one purpose, for example, providing information to a debtor as well collecting a debt." *Id.* (citations omitted).

Daley contends that the balance statements, LOP, assignment of benefits, financial policy notice, and Shuttera's letters to her attorney were in relation to the collection of a debt. Shuttera's letters do seem to relate to debt collection. Although it is a closer call, the Medical Defendants' statements do not. And because the LOP, assignment of benefits, and financial policy notice preceded any debt or collection activity, they cannot relate to the collection of a debt.

Shuttera's letters inform Meksraitis that Shuttera is acting on behalf of Dr. Bono and "handling the accounts receivable of Gulf Coast Spine Institute, BioSpine Institute and Anesthesia Services regarding medical services provided to your client, Lauren Daley." (Dkt. 50-5 at 6-12). Shuttera also notes he will "handle all legal issues pertaining to these accounts as well as any negotiations regarding any proposed settlement of the account." (Id.). The bottom of the letter states: "This is an attempt to collect a debt. Any information will be used for that purpose. If you dispute the validity of this debt you have 30 days to notify us of such." (Id. at 12). Although the letters do not explicitly demand payment, they do relate to debt collection. *See Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014) (finding debt activity where communication stated it is "for the purpose of collecting a debt" and refers to "collection efforts"); *Lear v. Select Portfolio Servicing, Inc.*, 309 F. Supp. 3d 1237, 1240 (S.D. Fla. 2018) ("this is an attempt to collect a debt").

As for the statements sent by Gulf Coast, BioSpine, and Avion, Daley observes that they include balance information, detachable payment coupons, and the language, "PAYMENT DUE UPON RECEIPT *THANK YOU.*" Defendants respond that some statements reflect a $0.00 patient balance and the others do not demand payment.[10] And the statements do not include any demands or threats for failure to pay, such as accrued interest or litigation. *See Reese*, 678 F.3d at 1217 (communication "demand[ing] full and immediate payment," threatening to add attorney's fees to the total amount "for which collection is sought," and stating collector "is attempting to collect a debt"); *see also Pinson*, 618 F. App'x at 554 (separate communications noting fees would continue to accrue in absence of payment and amount owed would increase if claimant did not reinstate loan).

Although a close call, I find that the statements do not relate to debt collection activity, but rather are informational. In any event, any dispute about whether the statements constitute debt collection activity does not affect summary judgment because, as discussed, there is no evidence the statements were sent directly to Daley, and they were not harassing.

Next, in a novel contention, Daley contends that the LOP, assignment of benefits, and financial policy notice constitute debt collection activity. Not unsurprisingly, however, she provides no authority finding that these industry standard forms are attempts to collect a debt.

---

[10] Only one statement reflected an amount due (Dkt. 55-1 at 35), and it is undisputed that it was sent directly to Meksraitis. Daley also complains the statements were contradictory on their face because they reflected that $0.00 was due, although payment was due upon receipt. (Dkt. 46 ¶¶ 37, 43, 126, 148). But Daley does not tie this to an FCCPA violation. In any event, the statements are not so misleading as to support a claim. Additionally, in an answer to an interrogatory, Daley identifies the Medical Defendants' failure to "show proper adjustments" on its statements, (Dkt. 50-6 at 6), but Daley does not elaborate or mention any failure to show adjustments in her complaint or opposition to summary judgment.

Rather than demanding payment for an outstanding balance, the LOP merely assures payment to the Medical Defendants if insurance does not cover medical costs. (Dkt. 50-3 at 7). Indeed, the letter was signed before the surgery and before there was any debt to collect. The same is true for the assignment of benefits, which assigned Daley's rights under her insurance policy to BioSpine and directed the insurer to pay BioSpine. (Id. at 11). The forms also required her to "sign[] over" any check from her insurer to BioSpine. (Id.). And the only relevant provision in the financial policy notified Daley that a delinquent account would be turned over to an outside collection agency and she would be responsible for any collection costs. (Dkt. 50-1 at 50). Like the LOP, these forms do not demand a specific payment and preceded surgery and the existence of any debt. And it appears that these were consensual communications, if not initiated by Daley.[11]

In sum, while Shuttera's letters to Daley's attorney relate to the collection of a debt, the LOP, assignment of benefit, and financial policy do not. Even if the statements for medical services relate to debt collection, summary judgment is appropriate because they were not sent directly to Daley and were not harassing.

### There Was No Communication with Daley

Daley acknowledges that no Defendant directly communicated with her regarding any medical bills. (Dkt. 50-1 at 21). As noted, all medical bills and statements were directed to Meksraitis, and she did not have "any involvement in the back and forth" between him and the

---

[11] Defendants contend that these pre-surgery, new patient communications are not actionable under section 559.72(18), which immunizes communications where "the debtor's attorney consents to a direct communication with the debtor" or "the debtor initiates the communication." (Dkt. 49 at 17). Defendants argue that Meksraitis consented to the communication by referring her to Dr. Bono. Meksraitis was faxed copies of at least the LOP and did not object. And Daley arguably initiated the communications by seeking services from Dr. Bono.

Defendants. (Id.).[12] And she never had any contact with Shuttera. (Id. at 8). Nor did she see the letters he sent to Meksraitis. (Id. at 21). Simply put, the absence of direct communication between Defendants and Daley defeats her section 559.72(18) claims.

3.      Section 559.72(7) of the FCCPA

Daley contends that, in contrast to section 559.72(18), communication with the debtor is not required for a claim under section 559.72(7) and that harassing communication through a debtor's lawyer can constitute a violation.[13] Even if this is correct, she must prove that Defendants willfully communicated "with such frequency as can reasonably be expected to harass [her or her family]," or "willfully engage[d] in other conduct which can reasonably be expected to abuse or harass [her or her family]." Fla. Stat. § 559.72(7). Because she cannot prove the necessary frequency or harassing conduct relating to debt collection, summary judgment is appropriate.

---

[12] Although Daley's counsel suggests she did not remember the communications between her and the Medical Defendants (Dkt. 54 at 14), her deposition testimony was clear:

Q: Did Dr. Bono ever contact you directly in regards to any type of collection activity?
A: No.
Q: What about BioSpine?
A: No.
Q: Gulf Coast Spine?
A: No.
Q: Avion?
A: No.
Q: What about any medical bills? Did you receive any medical bills directly?
A: No.
Q: So all those went through Mr. Meksraitis?
A. Yes.

(Dkt. 50-1 at 21). Henderson confirmed the "billing statements for services provided by the Medical Defendants to [Daley] were sent to Michael Meksraitis, Esq.'s office." (Dkt. 50-3 at 3). Accordingly, Daley's unsupported contention in her opposition that there was direct contact is belied by the record and does not create a genuine dispute of material fact. That some of the statements (not the mailing envelopes) list Daley as the addressee does not show that they were sent directly to her.

[13] In support, Daley cites two FDCPA cases, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007), and *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007). But the FDCPA provisions discussed in those cases do not expressly prohibit communication or abusive and harassing conduct to a debtor or a member of his family.

*Frequency*

Even if the Medical Defendants' statements constitute debt collection activity, they were not sent with such frequency as can reasonably be expected to harass Daley. Gulf Coast sent statements on April 10, June 18, July 21, and September 14, 2015, March 17 and May 11, 2016, August 22, 2017, and August 3, 2018. (Dkt. 50-3 at 18-24; Dkt. 50-4 at 1-3; Dkt. 55-1 at 34, 39, 45). Avion sent statements on June 18 and September 14, 2015, May 11, 2016, August 22, 2017, and August 3, 2018. (Dkt. 50-4 at 5-7; Dkt. 55-1 at 36, 44). And BioSpine sent statements on July 21 and September 14, 2015, May 11, 2016, August 22 and 30, 2017. (Dkt. 50-4 at 9-12; Dkt. 55-1 at 37, 46). Shuttera's letters, meanwhile, are dated August 1 and November 1, 2016, and January 30 and May 15, 2017. (Dkt. 50-5 at 6-12).

Although some statements from different Medical Defendants were sent in the same month, each waited more than a month, or sometimes a year, before sending a successive statement. BioSpine was the only defendant to send a statement more than once in a month, and those were its first statements in more than a year. Shuttera's correspondence was likewise infrequent.

Most cases analyzing section 559.72(7) involve phone calls, not letters.[14] But in *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016), the court found that one piece of mail a month, and two pieces of mail in the same month, was

---

[14] The FDCPA includes examples of harassing, oppressive, or abusive measures to collect a debt, including "[c]ausing a phone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Although "the question of whether conduct is harassing or abusive is ordinarily an issue for the factfinder," courts have held that "[p]roof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation." *McCaskill v. Navient Sols., Inc.*, 178 F. Supp. 3d 1281, 1296 (M.D. Fla. 2016) (citations omitted); *see also Lardner v. Diversified Consultants, Inc.*, 17 F. Supp. 3d 1215, 1226 (S.D. Fla. 2014) (holding that 132 calls over eight months was not sufficient where the plaintiff produced no other evidence, "such as requesting the communications stop").

insufficient to satisfy § 1629d of the FDCPA and section 559.72(7) of the FCCPA. 159 F. Supp. 3d at 1305. Those letters, like the ones sent in this case, "did not use abusive language, did not threaten [the plaintiff], and did not contact [her] friends, co-workers or family members." *Id.* In sum, the Medical Defendants' statements are insufficiently frequent or harassing as to establish a claim under section 559.72(7).

### Other Conduct

Daley also contends that misrepresenting the amount the Medical Defendants were owed and "holding up the disbursement of her personal injury funds indefinitely" constituted abusive or harassing conduct under section 559.72(7). (Dkt. 46 ¶ 48). In sum, this contention fails because she presents no evidence of misrepresentation or overcharging. She understood that medical providers negotiate reduced amounts for medical service with insurance companies, but that she would be responsible for an unpaid balance. (Dkt. 50-1 at 7-8). Nor is enforcing the LOP in the context of treating a personal injury patient and insuring payment from the settlement for treatment not covered by insurance an abusive or harassing activity.

First, it is not clear that this claim is available under section 559.72(7). Indeed, she points to no evidence that the Medical Defendants planned to use the LOP to coerce her to pay an *overcharged* amount when her insurers would not. And in any event, there is no evidence the Medical Defendants overcharged Daley or misrepresented the amount they were entitled to. Merely "holding up the disbursement of her personal injury funds" is not abusive or harassing in the context of a consensual LOP. That is the very purpose of LOPs, and standard in the industry.[15]

---

[15] Although Daley contests in her opposition that LOPs are standard in the industry, she provides no evidence in support of that contention. (Dkt. 54 at 16). Moreover, it is common knowledge that LOPs are used in personal injury litigation to insure that medical providers are paid from settlement proceeds if not covered by insurance.

(Dkt. 50-3 at 3). By requesting that Meksraitis not disburse the funds to Daley, Defendants were merely enforcing the terms of the agreement she signed prior to receiving treatment and the existence of any debt. This is not "conduct which can reasonably be expected to abuse or harass the debtor."

Last, Daley's claim that the Medical Defendants did not fulfill their obligation under the LOP to "make every effort to collect benefits from any and all available and/or applicable coverage" is unavailing. First, the claim sounds in breach of contract, not a violation of the FCCPA or FDCPA. Second, Gulf Coast was paid in full by Daley's insurer. And Defendants have presented undisputed evidence that coverage under the State Farm policy was exhausted and that Avion and BioSpine were not approved to bill Tricare, but Daley nonetheless went ahead with the surgery.[16] Accordingly, this claim fails and summary judgment in favor of Defendants is due to be granted.

4.    Section 559.72(9) of the FCCPA

Summary judgment is likewise appropriate on Daley's claim that Defendants violated 559.72(9) of the FCCPA by attempting to collect an illegitimate debt. The basis of this claim is unclear from Daley's opposition to summary judgment. To the extent she argues the same conduct giving rise to a violation of 559.72(7) and (18) also violates (9), (*see* Dkt. 54 at 5-6, 15), summary judgment is appropriate for the reasons discussed.

Additionally, Daley alleges in her complaint that the Medical Defendants overcharged her for services and performed unnecessary operations. (Dkt. 46 ¶¶ 22, 106).  But in her deposition,

---

[16] In her opposition, Daley argues that the Medical Defendants "knew they were not approved providers by Tricare" and that "they could get *more* money of the lawsuit recover[y] than from an insurance company," so they "got [her] to give them a claim on her lawsuit proceeds by communicating with her directly despite knowing she was represented by an attorney and they tied up the proceeds from the lawsuit to force her to pay." (Dkt. 54 at 6) (emphasis added). This conclusory and speculative argument is not supported by record evidence.

she admits she is unaware of any unnecessary procedures that were performed. She has no expert to testify that any of the procedures were unnecessary, or that she was overcharged. In her opposition, she presents no proof of overcharging. Indeed, the Medical Defendants' evidence that they did not overcharge is undisputed.[17] (Dkt. 50-3 at 5). And while she disputes the amount of the debt, she does not dispute that she owes a balance to the Medical Defendants based on medical services performed. Finally, Defendants' use of the LOP does not invalidate an otherwise legitimate debt. Accordingly, summary judgment is appropriate on this claim.

### *FDCPA Claims*

Turning to the FDCPA claims against Shuttera, the statute prohibits debt collectors from "making false or misleading representations and from engaging in abusive and unfair practices in connection with the collection of any debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297-98 (11th Cir. 2015) (citing §§ 1692d-f). To establish a claim, Daley must show: (1) she was the object of collection activity arising from consumer debt;[18] (2) Shuttera is a debt collector as

---

[17] To the extent Daley relies on State Farm's explanations for rejecting claims to support her argument, that reliance is misplaced, in the absence of evidence that the services were unnecessary. For example, in rejecting a claim related to the surgery, State Farm noted it

> is using modifier -59 to indicate under certain circumstances, the physician may need to indicate that a procedure or service was distinct or independent from other services performed on the same day. Modifier -59 will identify procedures/services that are not normally reported together, but are appropriate under the circumstances. This may represent a different session or patient encounter, different procedure or surgery, different site or organ system, separate incision/excision, separate lesion, or separate injury (or area of injury in extensive injuries) not ordinarily encountered or performed on the same day by the same physician.

(Dkt. 55-1 at 23). Indeed, this explanation notes that, under certain circumstances, the procedures or services could be appropriate. In any event, State Farm's explanation, without more, is insufficient to create a genuine dispute of material fact, as Daley presents no evidence that links this or any other explanation to overcharging.

[18] This Circuit has held that "a debt collector's communications with a consumer's attorney . . . are subject to §§ 1692d-1692f . . . to the same extent as a debt collector's communications with the consumer himself." *Id.*

defined by the FDCPA;[19] and (3) he engaged in an act or omission that was prohibited by the FDCPA. *See Goodin v. Bank of Am., N.A.*, 114 F. Supp. 3d 1197, 1204 (M.D. Fla. 2015).

Daley alleges that Shuttera violated §§ 1692d-f of the FDCPA. (Dkt. 46 ¶¶ 184-86). As with her FCCPA claims, because she cannot show that Shuttera engaged in harassing conduct, made misrepresentations, or used unfair or unconscionable means to collect a debt, summary judgment is appropriate. This part of the motion is therefore due to be granted.

1. § 1692d

Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." This section lists examples of banned conduct, such as the "use of violence," the "use of obscene or profane language," and repeated phone calls intended to annoy or harass "any person at the called number."*Miljkovic*, 791 F.3d at 1305 (citing § 1692d(1)-(6)). This Circuit has held that "the debt collector's conduct must manifest a tone of intimidation." *Id.* (internal quotation marks and citations omitted). Claims under § 1692d are "viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985).[20]

---

[19] A "debt collector" includes "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Miljkovic*, 791 F.3d at 1297-98 (quoting 15 § 1692a(6)). Shuttera does not dispute that he is a "debt collector" under the FDCPA.

[20] In crafting this standard, the Eleventh Circuit "adapted" the "least-sophisticated consumer" standard for §§ 1692e-f "in order to take into account factors other than a debtor's level of sophistication." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1201 n.33 (11th Cir. 2010). Indeed, "[w]hether a consumer is more or less likely to be harassed, oppressed, or abused by certain debt collection practices does not relate solely to the consumer's relative sophistication; rather, such susceptibility might be affected by other circumstances of the consumer or by the relationship between the consumer and the debt collection agency." *Jeter*, 760 F.2d at 1179.

Put simply, Shuttera's conduct does not fall within any example in the statute. And for reasons discussed, based on the undisputed facts, an especially susceptible consumer would not find anything harassing, oppressive, or abusive about his correspondence and request to Meksraitis that settlement proceeds not be disbursed pursuant to the LOP. And there is no language in Shuttera's letters that is obscene, profane, or that "manifest[s] a tone of intimidation." Summary judgment is therefore appropriate on this claim. [21]

2. § 1692e

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." "Examples of proscribed conduct include implying that the consumer committed any crime, falsely representing the amount of the debt, and threatening to take legal action that is not intended to be taken." *Miljkovic*, 791 F.3d at 1306 (citing § 1692e(1)-(16)). Daley presents no evidence meeting this prohibition.

In evaluating whether a debt collector's communication violates §§ 1692e-f the FDCPA, this Circuit applies the "least-sophisticated consumer" standard. *LeBlanc*, 601 F.3d at 1193. As the appellate court explains:

> The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

---

[21] The overcharging claims are likewise unavailing. While plaintiffs have alleged that a treating hospital's overcharging and debt collection activity violates the FDCPA, those claims were dismissed because a hospital is generally not a debt collector under the FDCPA. *See, e.g.*, *Burton v. William Beaumont Hosp.*, 347 F. Supp. 2d 486 (E.D. Mich. 2004); *Grant v. Trinity Health-Michigan*, 390 F. Supp. 2d 643 (E.D. Mich. 2005). Daley cites no cases where such claims were successfully brought against a debt collector.

*Id.* at 1194 (internal quotation marks, modifications, and citations omitted). The same standard applies to communications directed to a consumer's lawyer. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1277 (11th Cir. 2016) (although not foreclosing "competent lawyer" standard, applying "least sophisticated consumer" standard where communications were directed at lawyer).

As with her § 1692d claim, Daley's allegations do not align with most of the statute's examples of proscribed conduct. The closest is § 1692e(2)'s prohibition against false representations of the amount of debt. Again, however, she presents no evidence to refute the Medical Defendants' evidence that they did not perform unnecessary procedures or overcharge her.

Moreover, Shuttera's conduct was not "misleading or deceptive in the traditional sense." *Miljkovic*, 791 F.3d at 1306. He did not misrepresent the effect of the LOP, incorrectly identify the holder of the debt, or include "false or deliberately ambiguous threats" of future litigation. *Id.* (citations omitted). Although the letters state that Shuttera "will handle all legal issues pertaining to these accounts," there is no mention of litigation. There is, in short, no evidence of false, deceptive, or misleading representations or means. Summary judgment is therefore appropriate on this claim.[22]

---

[22] Daley also argues that Shuttera violated § 1692e by writing his letters on BioSpine's letterhead. (Dkt. 55 at 4). Section 1692e(14) prohibits a debt collector from using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization." Notwithstanding, she did not allege this claim in her Second Amended Complaint, and it will not be considered. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (rejecting claim raised for the first time in opposition to summary judgment motion; "[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint."); *see also Seachase Condo. Owner's Ass'n, Inc. v. Nextel WIP Lease Corp.*, No. CIV.A. 1:12-00711-N, 2013 WL 6385911, at *2 n.6 (S.D. Ala. Dec. 6, 2013) (collecting cases).

The letters, moreover, note that Shuttera is an attorney "acting on behalf of" Dr. Bono and that "[o]wnership of these bills remains fully with the MEDICAL PROVIDERS." (Dkt. 50-5 at 6-12). And there were prior letters that listed Shuttera as a contact and used a CSC letterhead. (Dkt. 55-1 at 33). Given the circumstances, Shuttera's use of BioSpine's letterhead is not a false, deceptive, or misleading practice. *See Mahan v. Retrieval-Masters Credit Bureau,*

3. § 1692f

Section 1692f prohibits a debt collector from using an "unfair or unconscionable means to collect or attempt to collect any debt." This Circuit describes § 1692f as a "catch-all prohibition on unfair and unconscionable conduct." *Miljkovic*, 791 F.3d at 1308. In applying the section, the court in *Miljkovic* considered the common usage of those terms: "Unfair" is defined as "marked by injustice, partiality, or deception," and "unconscionable" is defined as "shockingly unfair or unjust." *Id.* The court also noted that the plaintiff "fail[ed] to allege any conduct beyond that which he asserts violates the other provisions of the FDCPA, and, in doing so, [he] fails to specifically identify how [the debt collectors'] conduct . . . was either unfair or unconscionable *in addition to* being abusive, deceptive, or misleading." *Id.* (emphasis in original); *see also LeBlanc*, 601 F.3d at 1200 & n.31 (finding it "doubtful" that conduct found not to violate § 1692e(5) could be perceived as unfair and unconscionable).

As Daley's claims under §§ 1692d-e fail, so too does her claim under § 1692f. She offers no evidence that, under the least-sophisticated consumer standard, Shuttera used unfair or unconscionable means to collect on a debt. Summary judgment on this claim is therefore appropriate.

---

*Inc.*, 777 F. Supp. 2d 1293, 1298-99 (S.D. Ala. 2011) (requiring that the name must be false, deceptive, or misleading); *see also Sheriff v. Gillie*, 136 S. Ct. 1594, 1601-02 (2016) (rejecting § 1692e(14) claim where "the letterhead identifies the principal—Ohio's Attorney General—and the signature block names the agent—a private lawyer hired as outside counsel to the Attorney General").

**CONCLUSION**

Based on the undisputed material facts, Defendants' motions for summary judgment are **GRANTED**. (Dkts. 48, 49). Defendants' motion to dismiss is **DENIED as moot**. (Dkt. 47). The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions, and close the file.

**DONE AND ORDERED** this 28th day of October, 2019.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record